**CHROMALLOY GAS TURBINE CORPORATION, Appellant,**

v.

**UNITED TECHNOLOGIES CORPORATION, Appellee.**

**No. 04–97–00674–CV.**

Court of Appeals of Texas, San Antonio.

Nov. 24, 1999.

Rehearing Overruled Nov. 24, 1999.

Timothy Patton, Pozza & Patton, San Antonio, John W. Davidson, Lea A Ream,

Davidson & Troilo, P.C., San Antonio, Salem M. Katsh, P. Michael Jung, Strasburger & Price, L.L.P., Dallas, Richard P. Hogan, Jr., Roger Townsend, Hogan Dubose & Townsend, L.L.P., Houston, Staci B. Barber, David Lender, Weil, Gotshal & Manges, L.L.P., Stuart N. Krinsly, Ira Schreger, Steven R. Lowson, New York, NY, for Appellant.

Paul A. Drummond, Zachary B. Aoki, Jenkens & Gilchrist, Groce, Locke & Hebdon, P.C., San Antonio, Fred H. Bartlit, Jr., Donald E. Scott, Mark L. Levine, Ryan D. Downs, Bartlit Beck Herman Palenchar & Scott, Chicago, IL, Ricardo G. Cedillo, Davis, Adami & Cedillo, Inc., San Antonio, David E. Keltner, Karen S. Precella, Jose, Henry, Brantley & Keltner, L.L.P., Fort Worth, Thomas H. Crofts, Jr., Ellen B. Mitchell, Crofts, Callaway & Jefferson, P.C., San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice ALMA L. LÓPEZ, Justice PAUL W. GREEN, Justice.

## ON MOTION FOR REHEARING

Opinion by: PAUL W. GREEN, Justice.

The opinions of the court dated October 14, 1998, and November 17, 1999, are withdrawn and the following is substituted. The motion for rehearing is overruled.

* * *

The question is whether a private plaintiff in an antitrust action is entitled to injunctive relief when the defendant attempted to engage in monopolistic conduct, but the illegal conduct caused the plaintiff neither damage nor irreparable injury. Under the antitrust statute, a plaintiff who is threatened with injury because of the monopolistic conduct of a defendant may enjoin the illegal conduct. In this case, because the evidence is inconclusive that the plaintiff is threatened with injury, we hold it was not an abuse of discretion for the trial court to deny injunctive relief.

Accordingly, we affirm the judgment of the trial court.

## Background

Chromalloy Gas Turbine Corporation ("Chromalloy") repairs commercial jet engines, including those made and sold by the Pratt & Whitney Aircraft Division of United Technologies Corporation ("Pratt"). In 1995, Chromalloy sued Pratt for violations of the state antitrust law. Specifically, Chromalloy alleged that Pratt offset its losses from the sale of new engines with monopolistic profits from the sale of spare parts. According to Chromalloy, Pratt increased the spare parts market by restricting the repaired parts market through a variety of anticompetitive activities, including withholding technical data, denying "approved status" to independent repairs, and advising airlines to reject repaired parts.

Pratt counterclaimed for declaratory and injunctive relief, alleging Chromalloy engaged in unfair competition. According to Pratt, Chromalloy possessed both the technical ability and the legal authority to develop and sell its own repairs, without Pratt intervention. Essentially, Pratt characterized Chromalloy's complaints as "sour grapes" about its own increasing competition and decreasing quality.

After a three-month trial, the parties' claims were submitted to a jury, which found that Pratt "willfully or flagrantly" attempted to engage in monopolistic conduct, but that Chromalloy was not damaged by the illegal conduct. The jury further found that Pratt's conduct would not cause irreparable injury to Chromalloy. Lastly, the jury found against Pratt on its claims against Chromalloy. The trial court rendered a take-nothing judgment against both parties. Pratt did not appeal. Chromalloy's appeal is limited to the trial court's refusal to grant injunctive relief.

## The Texas Antitrust Act

 The Texas Free Enterprise and Antitrust Act ("the Act") prohibits monopolies or attempts to monopolize. TEX. BUS. & COM.CODE ANN. § 15.05(b) (Vernon 1987). However, the mere "possession of monopoly or market power is not forbidden." E. THOMAS SULLIVAN & JEFFREY L. HARRISON, UNDERSTANDING ANTITRUST & ITS ECONOMIC IMPLICATIONS 244 (1988). Likewise, the prohibition against attempted monopoly does not encompass "all efforts to acquire market power." *Id.* The Act was not intended, for example, to protect against increasing competition. *See Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 122, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986).

 To establish an illegal monopoly, a plaintiff must show (1) the defendant's possession of monopoly power in the relevant market, and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident. *Caller–Times Pub. Co., Inc. v. Triad Communications, Inc.*, 826 S.W.2d 576, 580 (Tex. 1992). To prove attempted monopoly, a plaintiff must show (1) the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993).[1] The difference between actual monopoly and attempted monopoly rests in the requisite intent and the necessary level of monopoly power. *Image Technical Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1202 (9th Cir.1997), *cert. denied*, 523 U.S. 1094, 118 S.Ct. 1560, 140 L.Ed.2d 792 (1998).

 Once a monopoly or attempted monopoly is established, the Act permits recovery of damages as well as injunctive relief. Injunctive relief is available to a plaintiff if a violation of the Act threatens it with injury.

> Any person ... whose business or property *is threatened with injury by reason of anything declared unlawful in ... this Act* may sue any person ... to enjoin the unlawful practice temporarily or permanently. In any such suit, the court shall apply the same principles as those generally applied by courts of equity in suits for injunctive relief against threatened conduct that would cause injury to business or property.

TEX. BUS. & COM.CODE ANN. § 15.21(b) (Vernon 1987) (emphasis added), *and see Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969) (injunction authorized on demonstration of significant threat of injury from impending or ongoing violation).

### Standard and Scope of Review

 A jury may determine whether the Act has been violated, but the trial court determines the propriety of injunctive relief; that is, whether the illegal conduct threatens the plaintiff with injury. *See Valenzuela v. Aquino*, 853 S.W.2d 512, 514 n. 2 (Tex.1993); *State v. Texas Pet Foods, Inc.*, 591 S.W.2d 800, 803 (Tex. 1979). To make its determination, the trial court must consider the ultimate facts found by the jury and may consider that a settled course of conduct "will continue, absent clear proof to the contrary." *See Texas Pet Foods*, 591 S.W.2d at 804. Thus, the trial court's ruling is a mixed question of law and fact. *Alamo Title Co. v. San Antonio Bar Ass'n*, 360 S.W.2d 814, 816 (Tex.Civ.App.—Waco 1962, writ ref'd n.r.e.).[2]

---

**1.** Because the Texas Antitrust Act is derived from federal law, it should be construed in harmony with federal authority. TEX. BUS. & COM.CODE ANN. § 15.04 (Vernon 1987); *DeSan-*

*tis v. Wackenhut Corp.*, 793 S.W.2d 670, 687 (Tex.1990).

**2.** The Supreme Court has characterized "imminent harm" as a legal question for the

■ As with other mixed questions of law and fact, we review the trial court's decision to issue an injunction with the abuse of discretion standard. *See Priest v. Texas Animal Health Comm'n,* 780 S.W.2d 874, 875 (Tex.App.—Dallas 1989, no writ). Under this standard, we defer to the trial court's ruling on factual matters while reviewing legal questions *de novo. Pony Express Courier Corp. v. Morris,* 921 S.W.2d 817, 820 (Tex.App.—San Antonio 1996, no writ). The trial court abuses its discretion when it fails to properly apply the law to the undisputed facts, when it acts arbitrarily or unreasonably, or when it bases its ruling on factual assertions unsupported by the record. *Remington Arms Co., Inc. v. Luna,* 966 S.W.2d 641, 643 (Tex.App.—San Antonio 1998, pet. denied).

## Discussion

Chromalloy contends the trial court erred in refusing to grant an injunction because the verdict and record conclusively establish that Pratt's illegal conduct constitutes a threat of injury. Conversely, Pratt argues that Chromalloy failed to establish either a threat of injury or ongoing illegal conduct. We agree with Pratt and, by doing so, reject Chromalloy's contention that in a private action the finding of an antitrust violation, standing alone, automatically entitles the plaintiff to injunctive relief unless the defendant proves it has ended its anticompetitive practices.

■ There are different proof requirements for injunctive relief between government and private antitrust actions. In a government antitrust action, injunctive relief is available upon a finding that a defendant has engaged in monopolistic conduct. The inherent threat to the public interest is deemed sufficient to entitle the government to injunctive relief. But in a private action, a general threat to the public is insufficient to establish a plaintiff's

right to an injunction. *See Cargill, Inc. v. Monfort of Colorado, Inc.,* 479 U.S. 104, 122, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986) (private plaintiff must show injury or threatened injury to its own interests); *Credit Bureau Reports, Inc. v. Retail Credit Co.,* 476 F.2d 989, 992 (5th Cir.1973) (mere showing by private plaintiff of antitrust violation has no actionable significance because, while government action need only show antitrust violation, private litigant must show violation together with injury or threatened injury to its own interests caused by the violation). Therefore, as in any suit for injunctive relief, the burden rests with the plaintiff to establish that its private interests are threatened with harm due to the impending or ongoing illegal conduct of the defendant.

The trial court did not give a reason for its refusal to grant an injunction except to say that it based its decision on the jury verdict and the record. The jury found Chromalloy was not damaged or irreparably injured as a result of Pratt's illegal conduct, and the evidence tending to show Chromalloy is threatened with injury is both disputed and inconclusive.

Chromalloy relies on the jury's affirmative answer to the attempted monopoly question to show that it was threatened with harm. Specifically, it focuses on the question's definition of "attempted monopoly" and its reference to "dangerous probability":

> Did Pratt & Whitney attempt to engage in monopolistic conduct which was a material cause of injury to Chromalloy?
>
> "Attempt to engage in monopolistic conduct" means (1) a party has engaged in exclusionary conduct (2) with the specific intent to acquire or maintain monopoly power and (3) there is a danger-

court. *Operation Rescue–Nat'l v. Planned Parenthood, Inc.,* 975 S.W.2d 546, 554 (Tex. 1998). Legal questions may involve factual

determinations. *See El Paso Natural Gas Co. v. Minco Oil & Gas Co.,* 964 S.W.2d 54, 60–61 (Tex.App.—Amarillo 1998, pet. filed).

ous probability of the party achieving monopoly power in a relevant market.[3] According to Chromalloy, because the jury found there is a "dangerous probability" of Pratt achieving monopoly power in the replacement parts market, we must infer that Chromalloy is threatened by Pratt's ongoing illegal conduct. We disagree.

The elements of attempted monopoly must be contemporaneous; that is, the "dangerous probability" of achieving monopoly power must exist while "a party has engaged in exclusionary conduct." *See Spectrum Sports, Inc.*, 506 U.S. at 456, 113 S.Ct. 884 (requiring coexisting elements); *United States v. American Airlines, Inc.*, 743 F.2d 1114, 1118 (5th Cir.1984) (same). The answer to the jury question establishes that Pratt engaged in attempted monopolistic conduct at some indeterminate time in the past, but it does not imply a finding of continuing illegal activity that threatens Chromalloy with injury. The trial court was obliged to consider this when deciding whether or not to issue an injunction. *See Alamo Title Co.*, 360 S.W.2d at 816. Given the limited nature of the finding, the trial court was not required to conclude that ongoing illegal conduct threatened Chromalloy with injury. *See Kneip v. Unitedbank–Victoria*, 734 S.W.2d 130, 138 (Tex.App.—Corpus Christi 1987, no writ) (Dorsey, J., concurring) (stating "[n]o findings of fact [made by the jury] can mandate an injunction"). Thus, we turn to Chromalloy's assertion that Pratt's threatening, illegal conduct was established by the evidence as a matter of law.

Chromalloy asserted a number of separate acts for which it claimed damages and upon which it based its claim for injunctive relief. According to Chromalloy, these acts, taken together, constituted a settled course of conduct that violated the antitrust law. However, the evidence characterizing these events was hotly contested. For example, Chromalloy complained that Pratt failed to approve repairs as early as 1989 and as late as 1995. Pratt claimed it denied the approvals for various legitimate business reasons. In short, the record is subject to differing, but reasonable, interpretations on the question of whether there was ongoing illegal conduct that threatened Chromalloy with injury. Consequently, the trial court, in exercising its discretion, could conclude that Chromalloy was not threatened by Pratt.

### Conclusion

To obtain injunctive relief, a private antitrust plaintiff is required to show it is threatened with injury due to an antitrust violation. In this case, neither the jury findings nor the record conclusively establish that Chromalloy is threatened with injury as a result of Pratt's illegal conduct.[4] Accordingly, it was not an abuse of discretion for the trial court to deny Chromalloy injunctive relief. The judgment is affirmed.

---

**3.** Several terms from the definition of "attempted monopoly" were defined in the present tense, including the terms "exclusionary conduct," "monopoly power," and "relevant market." The definition of "exclusionary conduct" included the phrase "legitimate business justification," which, in turn, was also defined in the present tense. During jury deliberations, the jury asked whether the three elements of attempted monopoly were "independent or dependent of each other." The trial court referred the jury to the charge, but when the court received a second question asking whether "all 3 factors have to apply," the court responded, "Yes."

**4.** Because threat of injury was not established, we need not address whether, under the Texas Antitrust Act, Chromalloy was required to also demonstrate irreparable injury.