In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00129-CV
______________________________


PETER MARK THOMPSON, SR., Appellant
Â 
V.
Â 
SUZANNE THOMPSON-O'REAR, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 307th Judicial District Court
Gregg County, Texas
Trial Court No. 1999-1156-DR


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â Peter Mark Thompson, Sr. appeals from a family violence protective order. We first address
the issue of jurisdiction. The ex-wife, Suzanne Thompson-O'Rear, filed a motion asking us to
dismiss for want of jurisdiction. She argues that such a protective order is interlocutory and
unappealable. 
Â Â Â Â Â Â Â Â Â Â Â Â We have jurisdiction over an appeal of a final judgment. N. E. Indep. Sch. Dist. v. Aldridge,
400 S.W.2d 893, 895 (Tex. 1966). A final judgment is one which disposes of all issues and parties
to the case. Hinde v. Hinde, 701 S.W.2d 637, 639 (Tex. 1985). Thus, if a permanent injunction
disposes of all issues and parties, it is a final, appealable judgment. Striedel v. Striedel, 15 S.W.3d
163, 164 (Tex. App.âCorpus Christi 2000, no pet.); James v. Hubbard, 985 S.W.2d 516, 517 (Tex.
App.âSan Antonio 1998, no pet.). 
Â Â Â Â Â Â Â Â Â Â Â Â A protective order rendered during the pendency of the parties' divorce is not a final judgment
for purposes of appeal. Kiefer v. Kiefer, No. 2-04-014-CV, 2004 WL 541108, at *1 (Tex.
App.âFort Worth Mar. 18, 2004, no pet. h.); In re. K.S.L.-C, 109 S.W.3d 577, 579 (Tex.
App.âTyler 2003, no pet.); Bilyeu v. Bilyeu, 86 S.W.3d 278, 282 (Tex. App.âAustin 2002, no
pet.); Ruiz v. Ruiz, 946 S.W.2d 123, 124 (Tex. App.âEl Paso 1997, no pet.). However, a protective
order rendered during post-divorce proceedings that disposes of all issues and parties in the
underlying proceeding is final and appealable. Kiefer, 2004 WL 541108, at *1; Kelt v. Kelt, 67
S.W.3d 364, 366 (Tex. App.âWaco 2001, no pet.); Striedel, 15 S.W.3d at 164; Winsett v. Edgar,
22 S.W.3d 509, 510 (Tex. App.âFort Worth 1999); James, 985 S.W.2d at 517. 
Â Â Â Â Â Â Â Â Â Â Â Â Thompson-O'Rear argues that, although the divorce is final, a motion to modify is presently
pending (and has been for four years now) on the trial court's docket; therefore, the protective order
is part of that motion and cannot be appealed until the motion to modify is decided. We disagree. 
The motion for protective order was filed two years after the motion to modify and is not related to
that motion in any discernible fashion. It is not part of that motion and, therefore, we hold that its
finality is unaffected by the continued pendency of the motion for modification. 
Â Â Â Â Â Â Â Â Â Â Â Â Protective orders are also injunctions and as such are appealable. Kelt, 67 S.W.3d at 366;
Winsett, 22 S.W.3d at 510; Striedel, 15 S.W.3d at 164; James, 985 S.W.2d at 518.
Â Â Â Â Â Â Â Â Â Â Â Â A protective order gives injunctive relief and, if it disposes of all issues and parties, it is a
final appealable order. Kelt, 67 S.W.3d at 366; Striedel, 15 S.W.3d at 164; Winsett, 22 S.W.3d at
510; James, 985 S.W.2d at 518. The mere designation does not determine the nature of an order. 
We instead examine the character and function of the order to determine its nature. Del Valle Indep.
Sch. Dist. v. Lopez, 845 S.W.2d 808, 809 (Tex. 1992). In this case, the protective order, on its face, 
disposes of the issues and parties. It therefore appears that the order is final and appealable. We
conclude we have jurisdiction.
On the Merits
Â Â Â Â Â Â Â Â Â Â Â Â Thompson contends that there is insufficient evidence to support the trial court's finding that
family violence occurred and that the court made no finding that family violence is likely to occur
in the future, as is required under Tex. Fam. Code Ann. Â§ 85.001 (Vernon 2002). 
Â Â Â Â Â Â Â Â Â Â Â Â In our review, because the order provides injunctive relief, we apply the standard of review
that is consistently applied to review of injunctions.


 We review the granting or denial of a
permanent injunction for an abuse of discretion. Operation Rescue-Nat'l v. Planned Parenthood of
Houston and Southeast Tex., Inc., 975 S.W.2d 546, 560 (Tex. 1998); Chromalloy Gas Turbine Corp.
v. United Technologies Corp., 9 S.W.3d 324, 328 (Tex. App.âSan Antonio 1999, pet. denied). 
Â Â Â Â Â Â Â Â Â Â Â Â We then proceed to determine whether, based on the elicited evidence, the trial court made
a reasonable decision, or whether it is arbitrary and unreasonable. The question is not whether, in
the opinion of the reviewing court, the facts present an appropriate case for the trial court's action,
but whether the court acted without reference to any guiding rules and principles. Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241â42 (Tex. 1985). The mere fact that a trial court
may decide a matter within its discretionary authority in a different manner than an appellate court
in a similar circumstance does not demonstrate that an abuse of discretion has occurred. 
Southwestern Bell Tel. Co. v. Johnson, 389 S.W.2d 645, 648 (Tex. 1965). The trial court abuses its
discretion when it fails to properly apply the law to the undisputed facts, when it acts arbitrarily or
unreasonably, or when it bases its ruling on factual assertions unsupported by the record. 
Chromalloy Gas Turbine Corp., 9 S.W.3d at 328.
Â Â Â Â Â Â Â Â Â Â Â Â In this case, the statute provides that, in order to grant a protective order, a trial court shall
find that family violence has occurred and is likely to occur in the future. On that finding, the court
shall enter a protective order applying only to a person found to have committed family violence. 
Tex. Fam. Code Ann. Â§ 85.001. Family violence is defined as: 
(1) an act by a member of a family . . . against another member of the family
. . . that is intended to result in physical harm, bodily injury, assault, or sexual assault
or that is a threat that reasonably places the member in fear of imminent physical
harm, bodily injury, assault, or sexual assault, but does not include defensive
measures to protect oneself; . . . . 

Tex. Fam. Code Ann. Â§ 71.004 (Vernon 2002) (emphasis added).

"Family" is defined as, inter alia, individuals who are former spouses of each other or who are
parents of the same child. Tex. Fam. Code Ann. Â§ 71.003 (Vernon 2002). 
Â Â Â Â Â Â Â Â Â Â Â Â Thompson-O'Rear testified that she had a verbal confrontation with Thompson at their son's
baseball game regarding school pictures and that, when her husband (Mr. O'Rear) told him to stop
the questioning, Thompson's response was that "[y]ou can screw my wife, but you can't screw me"
in a voice loud enough to be heard by the son and the other people around them. Thompson-O'Rear
further stated Thompson encouraged Mr. O'Rear to, "Go ahead! Hit me! Hit me, Pat!" and he yelled
at her until Mr. O'Rear got up and turned around. At that point, Mr. O'Rear pushed Thompson. 
Thompson did not physically retaliate. Thompson-O'Rear testified that she was nervous and
shaking, and that they folded up their chairs and left as a result of the confrontation. She
acknowledged that Thompson had never physically attacked her nor threatened to physically harm
her. She testified briefly that he had been what she described as "abusive" toward their four sons,
but counsel went into that matter only briefly in this fashion:
Q.. . . You know that Pete will become physical, and that's why you were
nervous. Is that correct?
Â 
A. That's correct. 

Â Â Â Â Â Â Â Â Â Â Â Â The request for a protective order did not implicate Thompson's relationship with the children
in any respect, but only Thompson's ex-wife and her husband. Thompson-O'Rear also testified about
an email sent by Thompson to officials at the school the children attend containing various
statements questioning her mental state and claiming she had been sexually abused as a child by her
father.
Â Â Â Â Â Â Â Â Â Â Â Â Thompson-O'Rear stated that, the day after Thompson was served with temporary orders
directing him to keep a distance from her home, Thompson sat directly behind them at another ball
game and behaved in a manner they believed was provocative, or an "in-your-face attitude."
Â Â Â Â Â Â Â Â Â Â Â Â She testified that she felt harassed and threatened and that he would not leave her alone. 
However, she also testified that, during the incident at the second ball game, Thompson was already
in the stands when she arrived, sitting two rows behind Mr. O'Rear, about three-fourths of the way
up the bleachers, and that he stood up when he saw her, and moved three or four rows below where
Mr.Â O'Rear was sitting. Thompson-O'Rear testified she never sat down, but just left the stadium. 
She testified, "He's harassed me at ball parks. He's continually -- I've had to have people escort me
to my car even before I was married to Pat, every baseball game. He'd say things out loud like,
'Suzanne, get help!' Or 'Suzanne, go back to AA!' So, harassment, yes, continuously."



Â Â Â Â Â Â Â Â Â Â Â Â Thompson testified that he did ask about the school pictures three times during the first
confrontation, but did not lean over the chairs to talk to them, that Mr. O'Rear interrupted and "called
me a homosexual pedophile, quite loud, saying, 'Can't you hear her answer is "no"?'," and that Mr.
O'Rear came up and pushed him backward three times. He also testified that he said in a very low
voice, "Pat, you can screw Suzanne all you want, but don't you screw with my sons at all." 
Thompson also denied telling Mr. O'Rear to hit him.
Â Â Â Â Â Â Â Â Â Â Â Â Mr. O'Rear testified that Thompson came up behind them at the first confrontation over the
pictures, that Thompson was yelling or screaming at them and not talking quietly, and that
Thompson yelled at him to "Hit me, Pat! Go ahead and hit me!"
Â Â Â Â Â Â Â Â Â Â Â Â As set out above, the definition of family violence includes threats that reasonably place a
family member in fear of imminent physical harm, bodily injury, assault, or sexual assault. The
evidence presented to the court was in the nature of harassment.


 At some point, harassment may
transform into an active threat. However, Thompson-O'Rear repeatedly admitted that Thompson had
never threatened her with physical harm, and the only physical contact that occurred here was caused
by Mr. O'Rear in response to Thompson's goading. 
Â Â Â Â Â Â Â Â Â Â Â Â Thompson-O'Rear cites the recent case of Ulmer v. Ulmer, 130 S.W.3d 294 (Tex.
App.âHouston [14th Dist.] 2004, no pet.), which involved verbal assaults, and confrontations at
church and in the classroom by an ex-husband as constituting the requisite "threat" required to obtain
a protective order. However, in Ulmer, the court reviewed a long history in which the husband
specifically threatened to kill his wife. Additionally, he had ripped open the door to her home and
repeated the threat. After the divorce, he made unwanted contacts with her at school and in public
places. The court found sufficient evidence to affirm the protective order "in the context of the
previous threats to kill appellee." Id. at 300. The court concluded that the incident involving actual
threats to kill appellant and events subsequent to it constituted sufficient evidence.
Â Â Â Â Â Â Â Â Â Â Â Â By contrast, here, the evidence is that there were no prior threats of violence or actual
physical violence by Thompson. The record does not support a finding that Thompson threatened
Thompson-O'Rear in such a manner as to reasonably place one in fear of imminent physical harm
or bodily injury. Accordingly, the protective order cannot stand. 
Â Â Â Â Â Â Â Â Â Â Â Â We reverse the judgment of the trial court, and dissolve the protective order.
Â 


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Jack Carter
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice
Â 
Date Submitted:Â Â Â Â Â Â Â Â Â Â May 12, 2004
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â June 8, 2004





;text-justify-trim:punctuation'>






 
 
 
 
 
 
 




Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

 In
The

   Court
of Appeals

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Sixth
Appellate District of Texas at Texarkana

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  No. 06-11-00121-CR

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  KWAME NKRUMAH PRICE,
Appellant

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  V.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  THE STATE OF TEXAS, Appellee

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  On Appeal from the 76th Judicial District Court

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Titus County, Texas

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Trial Court
No. CR15,895

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Memorandum Opinion by Justice Moseley








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  MEMORANDUM OPINION

Â 

Â Â Â Â Â Â Â Â Â Â Â  Kwame Nkrumah
Price appeals his conviction for possession of a controlled substance, namely marihuana,
in an amount more than four ounces, but less than five poundsÂa state-jail
felony.Â  See Tex. Health & Safety
Code Ann. Â§ 481.121(b)(3) (West 2010).Â 
In a related case, also decided today, Price has appealed his conviction
for possession of a controlled substance, namely cocaine, in an amount of more
than four grams, but less than 200 gramsÂa second-degree felony. See Price v. State, cause number
06-11-00120-CR.Â  Price has filed a single
brief, in which he raises a single issue common to both of his appeals.

Â Â Â Â Â Â Â Â Â Â Â  We addressed
this issue in detail in our opinion of this date on PriceÂs appeal in cause
number 06-11-00120-CR. Â For the reasons
stated therein, we likewise conclude that error has not been shown in this
case.

Â Â Â Â Â Â Â Â Â Â Â  We affirm
the trial courtÂs judgment.

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Bailey
C. Moseley

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Date Submitted:Â Â Â Â Â Â Â Â Â  January
3, 2012

Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â  January
12, 2012

Â 

Do Not Publish

Â