**MISSOURI PACIFIC TRANSP. CO. v. UNION BUS LINES, Inc., et al.**

No. 2639.

Court of Civil Appeals of Texas. Eastland.

April 16, 1948.

Rehearing Denied May 7, 1948.

Kleberg, Eckhardt, Mobley, Lockett & Weil, of Corpus Christi, and Kelley, Lockett, Lockett & Mosheim, of Houston, for appellant.

Callaway & Reed of Dallas, Kemp Lewright, Dyer, Wilson & Sorrell and Ward & Brown, all of Corpus Christi, and A. M. Felts, of Austin, for apellees.

GRISSOM, Chief Justice.

In November, 1938, Missouri Pacific Transportation Company, Contintental Bus System and Bowen Motor Coaches, along with other bus companies, were operating in Corpus Christi from the Greyhound bus terminal. Bowen and Missouri Pacific felt they were not getting a fair part of the interline business and on November 15, 1938, entered into a contract with Irene Schaeffer for the erection by her of a bus station leased and to be used jointly by Missouri Pacific and Bowen in Corpus Christi. The contract provided that the depot was to be used for the common benefit of Missouri Pacific and Bowen; that they should each appoint a representative and that said representatives should constitute a board of control to manage the affairs of said carriers at said depot and that the acts of said board should thereafter be the acts of said carriers. It provided that said carriers should use said depot as their "principal facility" at Corpus Christi for receiving, discharging, soliciting and interchanging passengers and express business destined to or departing from Corpus Christi, but that either of said carriers might place its tickets on sale in

Corpus Christi at other bus depots. The contract provided in Article 5 that "neither Carrier shall have the right to assign or grant to any other person * * * the right to use any part of depot, and no right * * * of either Carrier shall be transferred * * * to any other Carrier which shall acquire all or any part of the highway motor transport business of such Carrier, the operation whereof by such acquiring carrier shall in any manner, or to any extent, be competitive with the business, wheresoever transacted by the other Carrier." It provided in Article 6 that, except with the approval of the parties to said contract, no accommodations should be furnished at the depot and no transportation sold there for any other company which, during the life of said contract, should operate any transport service to or from Corpus Christi, "provided nothing herein contained shall prevent the sale at depot of interline motor transportation tickets for the respective Carriers in case the initial transportation service under any such ticket shall be by means of the motor coach transportation service of one of the Carriers." The contract provided that a manager of the depot should be selected by the board of control who should retain his position only so long as his services were approved by both Carriers. It provided that the duties of the manager "shall be to conduct the general business of the depot, without preference or discrimination as between the Carriers, and to supervise all of the activities of said depot in a manner calculated to produce the greatest revenue to the parties to this agreement." It provided that said parties to the contract might each direct the manager relative to the sale of transportation where such solicitation of transportation is via the routes of connecting motor bus carriers of any of the carriers hereto and that such direction should be binding upon the manager where either of the parties to the contract is the initial carrier in such transportation.

Article 8 provided "Any revenues received from rental space, concessions, commissions from the sale of tickets of bus lines permitted to use depot, other than the Carriers, or privileges of Depot from any person or corporation not a party hereto, shall be deducted monthly for the benefit of the Carriers from the total expense of operating Depot."

Article 9 provided that the net cost of operating the depot should be paid by the carriers in the proportion that the gross sales of tickets for account of each of said carriers shall bear the gross sales of all of said carriers. The contract provided in Article 11 that the manager and other employees of the depot should act as agents for the carriers in selling transportation and receiving revenue and pay over said revenue as directed by the carriers, "or any other company whose transportation may be sold at Depot * * *." It provided that the manager should permit the representatives of the carriers, meaning the parties to the contract, "or of any company for whom transportation or other business may be sold at Depot," the right to inspect and copy from all books and records.

Article 17 is as follows: "As a condition, prior to the admittance of any other company, other than the Carriers, to the use of Depot or the sale of transportation thereat, Manager shall advise said company that the Carriers do not accept any responsibility for loss of money in transit from said Depot, nor in a bank or other place of safe keeping, but shall act only as the agent for said company in the transmission and handling of said money."

This contract is referred to by the parties as the "operating contract." Bowen Motor Coaches has become Continental Bus System, Inc. With the exception of Highway Transportation Company, most of whose operations and permits have been transferred to Continental, the bus depot leased from Mrs. Schaeffer has been occupied and used continuously from the completion of the bus depot in 1939 until January 4, 1947, by Missouri Pacific and Continental. In December, 1946, Union Bus Lines, Inc., which had been operating from the Greyhound Depot in Corpus Christi, and Continental, entered into a contract for "through service" between stations that did not include Corpus Christi which was apparently displeasing to both Missouri

Pacific and Greyhound and thereupon, Missouri Pacific began to operate out of the Greyhound depot in Corpus Christi to a greater extent and to cooperate with Greyhound more than it had previously done.

Soon thereafter, Greyhound refused to permit the Union Bus Lines, Inc., to enter its station in Corpus Christi and discontinued selling Union's tickets at the Greyhound station. On January 4, 1947, Union Bus Lines, Inc., at the invitation of Continental (successor to Bowen) entered the Missouri Pacific—Continental Bus station in Corpus Christi and thereafter used said depot as its base for selling its tickets and receiving and discharging passengers and soliciting business in Corpus Christi. This suit was filed by Missouri Pacific against Union to oust it from the Missouri Pacific—Continental bus station and to prevent the selling of union tickets there. Continental intervened and, upon a hearing, Missouri Pacific's petition for a permanent injunction against Union was denied and Missouri Pacific has appealed.

Missouri Pacific's points on appeal are in substance that the court erred in refusing to enjoin Union from selling its tickets at and operating its buses from the Missouri Pacific—Continental station in Corpus Christi because Missouri Pacific and Continental had contracted that neither would permit another bus company to use the station without the consent of the other and, appellant says, it had not consented to such use by Union and was damaged thereby.

The appellee, Union, by its counter points, contends that Union uses the Missouri Pacific—Continental bus station with the permission of both the Missouri Pacific and Continental and by authority from their manager and agent in charge of said station; that Missouri Pacific suffered no material damage by reason of the acts of Union and is therefore not entitled to equitable relief; that Missouri Pacific has ratified Union's entry into and use of said station by accepting money paid by Union for the use of the station and that Missouri Pacific's cause of action, if any, calls for the exercise of purely legal remedies and that, therefore, the trial court was correct in refusing to grant equitable relief.

■ No findings of fact or conclusions of law were filed. This court has no way of knowing why the trial court refused to grant the injunction. We are, therefore, required to presume that the trial court found the facts in favor of the appellees upon all material questions in dispute and that its refusal of the injunction was based upon any legal conclusion justified by the presumed finding of facts. Wilkerson v. Paschal, Tex.Civ.App., 210 S.W.2d 215. The statement of facts is lengthy and we shall not attempt to quote therefrom in support of our conclusions as to the presumed findings of the trial court on material and disputed issues of fact.

■ There was evidence from which the court may have concluded that Missouri Pacific, as well as Continental and their mutual manager and agent in charge of said station, consented to the entry into Missouri Pacific—Continental bus station and its use by the Union Bus Lines, Inc. The evidence is not conclusive that Missouri Pacific has suffered material damage by reason of the use of said station by Union. There is evidence that Missouri Pacific has ratified the entry of Union into the station by accepting commissions paid by Union for the use of said station. We, therefore, presume that the trial court found said facts in favor of Union, and, under such presumed findings, conclude the court did not err in refusing to grant the injunction. The judgment is affirmed.