

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00169-CV

_____

ROBERT H. HENRY; MARGARET GREEN HENRY, INDIVIDUALLY AND AS
TRUSTEE OF MARGARET GREEN HENRY TRUST U/W/O WILLIAM H.
GREEN, JR., AND AS TRUSTEE OF MARGARET GREEN HENRY TRUST
U/W/O ELIZABETH MORE GREEN; CLAYTON MOORE HENRY; AND
HELEN HENRY WRIGHT, Appellants

V.

GEORGE RAY SMITH, SUSAN A. TULL, AND SHANNON L. RILEY, IN THE
CAPACITIES AS CO-EXECUTORS OF THE ESTATE OF C.B. CHRISTIE, JR.,
DECEASED, Appellees

---

On Appeal from the 97th District Court
Archer County, Texas
Trial Court No. 2017-0100A-CV

---

Before Birdwell, Wallach, and Walker, JJ.
Opinion by Justice Wallach

# OPINION

Appellants (Surface Owners), the surface estate owners of the Camp Creek Ranch in Archer County, sued Appellees (Lessees), lessees of three oil and gas leases on the ranch, seeking damages to the surface estate. Surface Owners asserted causes of action for breach of contract, negligence, trespass, and nuisance. They also sought declaratory relief and permanent injunctive relief to prevent surface damage in the future. The trial court granted Lessees' motion for partial summary judgment against Surface Owners on their contract claim seeking to enforce surface covenants in the mineral leases, which effectively dismissed Surface Owners' breach of contract claim. The remainder of Surface Owners' claims were tried to a jury, which found in Surface Owners' favor on their negligence, nuisance, and trespass claims. The trial court entered judgment on the jury's verdict, awarded Surface Owners nominal damages for trespass and minimal actual damages for negligence, incorporated the prior summary judgment ruling on the contract claim, and denied permanent injunctive relief regarding trespass and alleged violations of the Natural Resources Code stemming from National Electric Code (NEC) violations. Surface Owners bring this appeal complaining of (1) the trial court's summary judgment on their breach of contract claim and (2) the trial court's refusal to grant permanent injunctive relief arising from statutory violations and trespass. We sustain Surface Owners' first issue and part of their second issue.

2

First, we hold that the trial court erred in granting Lessees' summary judgment on the breach of contract claim. Therefore, we reverse the trial court's judgment on Surface Owners' contract claim and remand the case to the trial court for further proceedings on that claim. Second, we hold that the trial court did not abuse its discretion in denying permanent injunctive relief to Surface Owners regarding violations of the Natural Resources Code arising from violations of the NEC. We therefore affirm that portion of the trial court's judgment denying permanent injunctive relief on that claim. Finally, we hold that the trial court abused its discretion by denying Surface Owners' request for injunctive relief arising from Lessees' trespass on Surface Owners' surface estate. We therefore reverse that portion of the trial court's judgment denying permanent injunctive relief to Surface Owners for trespass and remand the case to the trial court with instructions to enter judgment against Lessees enjoining them from trespassing on Surface Owners' property in the future.

## I. Summary Judgment

### A. Factual Background

Surface Owners (Robert H. Henry; Margaret Green Henry, Individually and as Trustee of Margaret Green Henry Trust u/w/o William H. Green, Jr. and as Trustee of Margaret Green Henry Trust u/w/o Elizabeth Moore Green; Clayton Moore Henry; and Helen Henry Wright) own the surface estate of the Camp Creek Ranch, a 15,000-acre tract of agricultural land in Archer County. Lessees (George Ray Smith, Susan A. Tull, and Shannon L. Riley, in the capacities as Co-Executors of the Estate

of C.B. Christie, Jr., Deceased) are the lessees of three oil and gas leases on the ranch, the two "Mangold" leases and the "Ferguson" lease (collectively, the leases). The late C.B. Christie, Jr., whose estate is being administered by Lessees Smith, Tull, and Riley, obtained the Mangold leases and the Ferguson lease in 1961, 1962, and 1974, respectively, from Surface Owners' predecessors in title. Each lease contains special surface covenants, including one that requires the lessee to bury oil and gas pipelines to a certain depth at the request of the lessor.[1]

When the leases were originally executed, the respective landowners—Claude Miller (Mangold lands) and W.B. Ferguson (Ferguson lands)—owned both the surface and mineral estates. Many years later, Miller and Ferguson conveyed the surface estates to Surface Owners' predecessors in interest, while reserving the mineral estates

---

[1] The Mangold leases' covenants state: "When requested by Lessor, Lessee shall bury pipelines below plow depth." The Ferguson lease's covenant provides: "Lessee shall bury all pipe lines below ordinary plow depth, and when requested by Lessor, shall bury same sufficiently deeper to permit mesquite root removal with a root plow, provided, no such pipe line need be buried deeper than sixty (60) inches in any event." The leases also contain other covenants which reserve rights to the lessors. Paragraph 8 of the Mangold Leases reserves to the lessor the right to require the lessee to (a) not drill a well closer than 200 feet to houses or barns; (b) pay "all damages . . . caused by Lessee"; and (c) indemnify the lessor from all loss or damage of every kind or character which lessor may suffer because of lessee's acts or omissions. Similarly, the Ferguson Lease reserves to the lessor the right, interest, and benefit to require the lessee to: (a) drill only with "standard cable tools"; (b) fill all pits, plug all holes not in use, and restore the surface; (c) maintain fences around wells to turn livestock, and conduct all operations with a "high degree of care"; and (d) shut down the lease upon notice from lessor that salt water and other waste materials are not being disposed of properly. Collectively, these shall be referenced as the "covenants."

4

(which were leased to Lessees). Specifically, in 1984, Miller conveyed the surface of the Mangold lands by deed to Surface Owners' predecessor "together with all and singular the rights and appurtenances thereto . . . ." In 1994, Ferguson conveyed the surface of the Ferguson lands by deed (the "Ferguson deed") to Surface Owners' predecessor "together with all improvements, structures and fixtures located thereon and all rights and appurtenances pertaining thereto . . . ."

Whether the covenants were conveyed with the surface estates or reserved to the mineral estates is at issue; the reservation language in the deeds is therefore key. Miller's reservation language provided:

> Grantors [i.e. Miller] retain and reserve to themselves, as their respective interests now exist, all ownership, right, title and interest, in and to . . . [a]ny and all valid, recorded oil, gas and mineral lease or leases now existent and in full force and effect, which reservation and retention by the Grantors includes all royalties, and all delay rentals and royalties, and any and all payments due, or that may become due in the future, or which may become payable under the terms of any existent or future lease or leases to the Grantors, their heirs, successors or assigns.

Ferguson's reservation language provided:

> Grantors [i.e., Ferguson] have RESERVED and RETAINED, and by these presents do hereby RESERVE and RETAIN, unto themselves, their heirs, successors and assigns, all of Grantors' rights, titles, interests and estates in and to the oil, gas and other minerals in and under, and that may be produced from, the real property described in the attached Exhibit "A" and all rights and appurtenances pertaining thereto, including, without limitation, all of Grantors' rights, titles, interests and estates in all executive rights; all royalty; and all bonus, delay rentals, royalty and other amounts and benefits accruing or to accrue under existing or future oil and gas leases covering all or part of such real property.

In 2002, Surface Owners purchased the surface of the Camp Creek Ranch, which includes the lands encumbered by the leases. Surface Owners requested that Lessees bury all flow lines on the leases pursuant to the covenants. Lessees refused, taking the position that Surface Owners could not enforce the covenants because the covenants had been detached from the surface estate through the mineral reservations when Surface Owners' predecessors in interest acquired the surface rights to the Mangold and Ferguson lands. In other words, Lessees argued then (and now argue) that the covenants do not belong to Surface Owners.

Surface Owners, as alleged successors to the covenants, sought in the trial court to enforce the covenants or, alternatively, to recover damages for their breach. Surface Owners alleged that the leases provided:

> "Lessee shall pay all damages to Lessor or Lessor's tenants caused by Lessee, and Lessee hereby indemnifies Lessor from all loss or damage of every kind or character which Lessor may suffer because of Lessee's acts or omissions." Mangold Leases, ¶ 8.

> "Lessee agrees to use due diligence to . . . permit no waste of oil, nor no damage from salt water." Mangold Lease 285/75, ¶ 9; Mangold Lease 283/267, ¶ 10.

> "In addition to any other duty with respect thereto . . . lessee shall conduct all operations hereunder with a high degree of care so as to avoid if reasonably possible or if not to minimize injury or loss, either on or off the leased premises, to grass . . . [,] crops, trees, livestock, fences, gates and all other property of lessor or tenants of lessor . . . . Nothing herein shall be construed as consent by lessor to any such injury or loss and/or waiver of damages or other remedy therefrom. Ferguson Lease ¶ 18.

The lessee shall pay damages to the lessor for all injury to grass (whether cultivated or wild)[,] crops, trees, lands, streams, reservoirs or underground formations, and all livestock, all whether within the leased premises or other lands of lessor, which shall be caused by the imprudent or improper disposition or lack of proper disposition of salt water or waste materials, and all damages which may accrue by reason of lessor exercising its rights to shut down and stop operations as herein provided. Ferguson Lease ¶ 19.

Surface Owners alleged that Lessees "breached the terms of their oil and gas leases in the following" ways:

(1)     not burying all their flow lines (per Vol. 353, P. 821, ¶ 10);

(2)     not burying all their flow lines after demand (per Vol. 285, P. 75, ¶ 8, and Vol. 283, P. 267, ¶ 8);

(3)     not plugging all wells not in use (per Vol. 353, P. 821, ¶ 17);

(4)     not restoring the surface after abandonment of any surface use (Vol. 353, P. 75, ¶ 17);

(5)     not keeping the leased premises free of trash, scrap material and equipment (Vol. 353, P. 75, ¶ 17);

(6)     storing on the leased premises material and equipment not required for use on the leased premises in the immediate future (Vol. 353, P. 75, ¶ 17);

(7)     not exercising all [their] duties with a high degree of care so as to avoid damage to grass, crops, trees, fences, gates (including cattle guards) and all other property of [Surface Owners] (Vol. 353, P. 75, ¶18);

(8)     not erecting and maintaining fences sufficient to turn livestock around all of [Lessees'] wells, pits, pumps, batteries and other structures (Vol. 353, P. 75, ¶ 18);

(9)     not property [sic] disposing of all salt water and waste materials produced from wells operated by [Lessees] (Vol. 353, P. 75, ¶ 19);

7

(10)  not paying for the [Surface Owners'] cow which the Estate has electrocuted;

(11)  digging excess, unnecessary and unpermitted pits; and

(12)  permitting saltwater spills, and the resulting damages.

Lessees filed their "First Motion for Partial Summary Judgment (Express Detachment of Lease Surface Covenants)" against Surface Owners' breach of covenant claim (breach of contract). Lessees contended that Surface Owners were not the successors to the covenants because they had been detached from the surface estate and reserved to Lessees by virtue of the contract provisions cited above. In their prayer for relief, Lessees asked the trial court to grant their motion and to declare that Surface Owners were "precluded by law from asserting those covenants in [t]he [l]eases relating to the surface which exceed those arising under common law."

The trial court heard and granted Lessees' motion for partial summary judgment on August 6, 2018, but no order was signed at that time. On August 15, 2018, Surface Owners filed their Motion for Reconsideration of the trial court's partial summary judgment ruling, and the trial court considered it by written submission on September 17, 2018. By order dated January 11, 2019, the trial court granted Lessees' motion for partial summary judgment, but the order contained no decretal language disposing of the claim. The same order denied Surface Owners' motion for reconsideration.

After the trial on the merits of Surface Owners' other claims, the trial court incorporated into the "Final Judgment" its order granting Lessees' partial summary judgment on Surface Owners' breach of contract claim, again without including any decretal language on the claim, and denying Surface Owners' motion for reconsideration of the partial summary judgment. However, the "Final Judgment" did contain a "Mother Hubbard" clause which provided that "all other relief not granted herein is denied."[2]

## B. Standard of Review

We review the trial court's rulings on summary judgments de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors,*

---

[2]Ordinarily, an order that grants a motion but that has no decretal language grants no relief and is not appealable. *Shetewy v. Mediation Inst. of N. Tex., LLC*, 624 S.W.3d 285, 288 (Tex. App.—Fort Worth 2021, no pet.); *In re Wilmington Tr., Nat'l Ass'n*, 524 S.W.3d 790, 792 (Tex. App.—Houston [14th Dist.] 2017, orig. proceeding). However, because the "Final Judgment" contained the Mother Hubbard language, we conclude that the trial court intended to deny Surface Owners relief on their breach of contract claim, which was the subject of Lessees' Motion for Partial Summary Judgment, and that the Final Judgment is, in fact, final and appealable. *See In re the Guardianship of Jones*, 629 S.W.3d 921, 924 (Tex. 2021); *Lehman v. HarCon Corp.*, 39 S.W.3d 191, 201 (Tex. 2001); *Rios v. Tex. Bank*, 948 S.W.2d 30, 32 (Tex. App.—Houston [14th Dist.] 1997, no pet.); *Wilhite v. H.E. Butt Co.*, 812 S.W.2d 1, 4 (Tex. App.—Corpus Christi–Edinburg 1991, no writ), *abrogated in part on other grounds by Cain v. Hearst Corp.*, 878 S.W.2d 577, 578 (Tex. 1994).

*Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

Regarding the trial court's conclusions of law and interpretations of unambiguous deeds, the standard of review is also de novo, with no deference accorded to the trial court's decision. *Godoy v. Wells Fargo Bank, N.A.*, 575 S.W.3d 531, 536 (Tex. 2019); *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991); *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986).

## C. Analysis

Both parties contend that the deeds in question are unambiguous. We agree. We are therefore charged with construing the deeds as a matter of law. *See Wenske v. Ealy*, 521 S.W.3d 791, 794 (Tex. 2017). In so doing, our primary duty is to ascertain the intent of the parties from all of the language within the four corners of the deeds. *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 743 (Tex. 2020). Deeds are construed to convey the greatest estate permitted by the deed's language. *Id.* at 746; *Barrow Shaver Res. Co., LLC v. NETX Acquisitions, LLC*, No. 06-20-00081-CV, 2021 WL 3571394, at *5 (Tex. App.—Texarkana August 13, 2021, pet. filed) (mem. op.). A deed generally passes to the grantee all of the estate owned by the grantor at the time of the conveyance—including "any appurtenance (benefit or burden) to the conveyed land . . . even if not specified." *Aery v. Hoskins, Inc.*, 493 S.W.3d 684, 700 (Tex. App.—San Antonio 2016, pet. denied); *see Cockrell v. Tex. Gulf Sulphur Co.*, 299 S.W.2d 672,

676 (Tex. 1956). "Appurtenances include all rights and interests necessary for the full enjoyment of the property conveyed." *Escondido Servs., LLC v. VKM Holdings, LP*, 321 S.W.3d 102, 106 (Tex. App.—Eastland 2010, no pet.).

Because a pipeline burial covenant is "attached to the surface," it generally runs with the land and is conveyed through a deed.[3] *See Mobil Oil Corp. v. Brennan*, 385 F.2d 951, 953–54 (5th Cir. 1967) (holding a pipeline burial covenant is "attached to the surface estate, and will remain with the same forever unless expressly detached therefrom by the surface owner"). This rule is designed to protect the surface estate. *See id.* To deviate from the general rule, the deed must contain a reservation or exception that expressly reserves or detaches the burial covenant. *Id.*; *see Farm & Ranch Inv'rs, Ltd. v. Titan Operating, L.L.C.*, 369 S.W.3d 679, 681 (Tex. App.—Fort

---

[3]The parties' briefing focuses on the pipeline burial covenants, but the parties recognize that all the covenants either remained with the surface estate or were detached from the surface estate en masse. Thus, if the summary judgment was erroneous as to the alleged breach of one covenant, it was erroneous as to the alleged breach of all the covenants. Further, Surface Owners challenge the entire summary judgment, seeking a remand for a new trial on their entire breach of contract claim. Thus, although we follow the parties' lead by focusing our discussion on the pipeline burial covenants, we liberally construe the briefs to address, and we resolve, the propriety of the summary judgment regarding the entire breach of contract claim. *See* Tex. R. App. P. 38.1(f); *McKeithan v. Condit*, No. 13-10-00226-CV, 2013 WL 6729963, at *7 n.6 (Tex. App.—Corpus Christi–Edinburg Dec. 19, 2013, no pet.) (mem. op.); *Gray v. Entis Mech. Servs.*, LLC, No. 01-11-00129-CV, 2012 WL 1454485, at *3 (Tex. App.—Houston [1st Dist.] Apr. 26, 2012, no pet.) (mem. op.); *Benavente v. Granger*, 312 S.W.3d 745, 747 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *Stephenson v. LeBoeuf*, 16 S.W.3d 829, 843–44 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (op. on reh'g).

Worth 2012, pet. denied) ("A general warranty deed conveys all of the grantor's interest unless there is language in the instrument that clearly shows an intention to convey a lesser interest.").

The law disfavors reservations; they therefore cannot arise "by implication." *Perryman v. Spartan Tex. Six Cap. Partners, Ltd.*, 546 S.W.3d 110, 119 (Tex. 2018). As a result, a reservation must be stated in clear and specific language. *Piranha Partners*, 596 S.W.3d at 748 (explaining that "any 'reservation' must be 'by clear language' and cannot be implied"); *see, e.g.*, *Brennan*, 385 F.2d at 953–54 (holding surface burial covenant ran with the land because it was never expressly detached from the surface); *Montfort v. Trek Res., Inc.*, 198 S.W.3d 344, 357 (Tex. App.—Eastland 2006, no pet.) (holding deed's reservation of mineral interest did not reserve cattle guards to lessee because the deed "did not specifically reserve the cattle guards in the reservation paragraph"). Generally, a conveyance deed's mineral reservation is "insufficient" to reserve or detach surface rights. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 52–53 (Tex. 2017).

It is undisputed that the pipeline burial covenants in the leases belonged to the surface estates of the Mangold and Ferguson lands when Miller and Ferguson conveyed the surface estates to Surface Owners' predecessors. It is also undisputed that both deeds' conveyance language was broad enough to encompass the pipeline burial covenants. Specifically, the Mangold deed broadly conveyed the surface estate of the Mangold lands to Surface Owners' predecessor "together with all and singular

12

the rights and appurtenances thereto . . . ." The Ferguson deed broadly conveyed to Surface Owners' predecessor "all of the real property described in the attached Exhibit 'A,' together with all improvements, structures and fixtures located thereon and all rights and appurtenances pertaining thereto . . . ."

The only disputed issue is whether Miller and Ferguson expressly detached the covenants from the surface estates through the deeds' mineral reservations.[4] In other words, Surface Owners can enforce the covenants as a contract action unless the mineral reservations detached the covenants from the surface estates.[5]

The deeds' only references to the surface estates and the rights comprising those estates are in the broad grant provisions describing what Surface Owners

---

[4]Lessees acknowledged that the covenants ran with the surface estate "unless" the covenants "were detached from the surface estate" through the reservations. Lessees also acknowledged that the "sole question before this Court is whether the prior reservations in '[t]he 1984 Mangold Deed' and '[t]he 1994 Ferguson Deed' expressly detached [the surface covenants] from the surface estate and therefore [they] did not subsequently pass to [Surface Owners]."

[5]*See Smith v. Reid*, No. 04-13-00550-CV, 2015 WL 3895465, at *10 (Tex. App.—San Antonio June 24, 2015, pets. denied) (mem. op. on reh'g) (holding breach of covenant sounds in contract and will support award of attorney's fees under Section 38.001 of the Texas Civil Practice & Remedies Code); *see also Candlewood Creek Neighborhood Ass'n v. Gashaye*, No. 05–11–00380–CV, 2012 WL 3135721, at *2 (Tex. App.—Dallas Aug. 2, 2012, no pet.) (mem. op.) (holding that a covenant is a contract between the parties and that recovery of attorney's fees is permitted on a breach of contract action under section 38.001(8)); *Davis v. Canyon Creek Ests. Homeowners Ass'n*, 350 S.W.3d 301, 313 (Tex. App—San Antonio 2011, pet. denied) ("A restrictive covenant is a contract subject to the same rules of construction and interpretation as any other contract.").

13

own—i.e., "all" of the surface estates together with "all" of the "rights and appurtenances thereto . . . ." Since a deed is construed to convey the greatest estate permitted by the deed's language, *Piranha Partners*, 596 S.W.3d at 747, these deeds conveyed all of the surface estates and rights appurtenant to the surface estates, subject to the rights of the mineral interest owners, i.e., Lessees. The reservations do not contain any reference to the surface estates, let alone any indication that the grantors intended to detach covenants from the surface estates and reserve those covenants to themselves. Certainly, there are no clear, expressly worded reservations revealing any intent by the grantors to detach the surface covenants from the surface estates. To the contrary, the reservation language reserves the mineral interests and the rights appurtenant to the mineral interests, nothing related to the surface. The provisions are completely silent as to the surface covenants, which otherwise belong to the surface estates. Instead, the reservation language of the deeds mirrors the "five real property rights" retained by mineral estate owners when the estates are severed,[6]

---

[6]The Mangold deed's reservation has four specific subparagraphs, each describing one of the essential mineral rights the reservation "include[s]"—Paragraph 6(1) (the "right of ingress and egress"), Paragraph 6(2) ("all royalties, and all delay rentals"), Paragraph 6(3) (the "rights to explore for, develop, produce, and transport oil, gas and minerals"), and Paragraph 6(4) (the "rights to enter into new leases at any time for exploration, development or production of oil, gas, or other minerals"). Similarly, the Ferguson deed's reservation expressly references the essential mineral rights it includes. The grantor reserved the mineral interests "and all rights and appurtenances pertaining thereto, including, without limitation, all of Grantors' rights, titles, interests and estates in all executive rights; all royalty; and all bonus, delay

14

those being: "(1) the right to develop, (2) the right to lease, (3) the right to receive bonus payments, (4) the right to receive delay rentals, and (5) the right to receive royalty payments." *Lightning Oil Co.*, 520 S.W.3d at 52 (internal quotation marks and citations omitted). Deed language concerning the executive right to lease the minerals is insufficient to reserve control of the surface rights except to the extent it might be reasonably necessary to use the surface (and subsurface) to develop and produce minerals. *Id.* at 53; *see also Fort Worth 4th St. Partners, L.P. v. Chesapeake Energy Corp.*, No. 3:14-CV-03871, 2016 WL 6947910, at *7 (N.D. Tex. Nov. 28, 2016) (holding surface rights ran with the land because the "contract conveying the surface state[d] that the land [was] conveyed together with 'all rights, privileges, easements, benefits, and agreements appurtenant thereto'" and the reservation did not "expressly detach the payment obligation from the surface"), *aff'd*, 882 F.3d 574 (5th Cir. 2018).

Lessees rely heavily on *Manges v. Gulf Oil Corp.*, 394 F.2d 487, 488 (5th Cir. 1968), to support their position that the language of the deeds in question operated to detach the covenants from the surface estate. In *Manges* the court was dealing with a suit by a surface owner against the mineral lessee to enforce a pipeline burial covenant or to recover damages for its breach. Their common predecessor in title was Franco Wyoming Oil Company (Franco), who was the owner of both the surface and mineral

---

rentals, royalty and other amounts and benefits accruing or to accrue under existing or future oil and gas leases covering all or part of such real property."

15

rights, which included a covenant that Gulf, as lessee, would bury its pipelines running on the surface to below plow depth if required by Franco, the lessor. On July 1, 1965, Franco conveyed the mineral estate fee and rights to Warren and Co. On October 26, 1965, Franco conveyed the surface estate to Manges. The question presented was whether the conveyance of the mineral estate to Warren had severed the pipeline burial surface covenant and conveyed it with the mineral interest before the surface estate was conveyed to Manges. In holding that it had, the court stated:

> *In addition to* conveying "all rights, benefits, payments and interests provided for grantor or any predecessors in title to grantor" with respect to the mineral estate, "including, but not limited to, all royalties, bonuses, rentals, sums and considerations due or to be paid at any time to grantor under any of such leases, agreements, contracts or other items," *Franco Wyoming also conveyed to Warren "the royalty and all other rights, titles, interests, properties and estates reserved to the lessor under the oil and gas leases described in Exhibit A as the same may be or may have been amended, supplemented, extended, renewed or substituted for from time to time."*

*Id.* (emphasis added).

Lessees contend that this language is essentially the same as that presented in the deed reservations before us and that this court should apply the *Manges* court's reasoning to hold that the deed reservations detached the covenants in question from the surface estate and should therefore affirm the trial court's partial summary judgment. We decline to do so for two reasons.

First, except for United States Supreme Court decisions on questions of federal law, we are not bound by federal precedent. *Fort Worth ISD v. Palazzolo*, No. 02-18-00205-CV, 2019 WL 2454866, at *16 (Tex. App.—Fort Worth June 13, 2019, pet.

16

denied) (mem. op.); *P.C. ex rel. C.C. v. E.C.*, 594 S.W.3d 459, 464 (Tex. App.—Fort Worth 2019, no pet.). We are therefore not bound by *Manges*.

Second, *Manges* is distinguishable on the facts. In *Manges*, the grantor expressly detached the pipeline burial covenant by conveying his "rights as lessor . . . ." 394 F.2d at 487. The grantor's "rights as lessor" were distinct from and "[i]n addition to" the mineral interest rights the grantor "also conveyed" through the same instrument. It was the additional conveyance of "all other rights, titles, interests, properties and estates" that the Fifth Circuit called the "rights of lessor" and held had expressly detached the pipeline burial covenants from the surface—not the conveyance of the mineral estate and "all rights" and "benefits" attached to that estate, as Lessees contend. *See id.*; *see also Fort Worth 4th St. Partners*, 2016 WL 6947910, at *6 (recognizing that grantor's conveyance in *Manges* of "all other rights, titles, interests, properties and estates" were the "rights of lessor" that detached the pipeline burial covenant). It is this additional conveyance of the "rights of lessor" that is absent from the Mangold and Ferguson deeds reservations. *Manges*, therefore, is distinguishable on the terms of the controlling documents.

We are persuaded by the rationale of *Lightning Oil* that the Mangold and Ferguson deeds' reservation provisions conveyed only the mineral rights and property rights appurtenant thereto, not the surface covenants. *See* 520 S.W.3d at 52–53. There were no clear, express reservations of the surface covenants in the reservations. Since any such reservations of the surface covenants could not be established by implication

17

but would need to be expressly stated, no such reservation occurred here. *See Piranha Partners*, 596 S.W.3d at 748; *Perryman*, 546 S.W.3d at 119; *Montfort*, 198 S.W.3d at 357. We sustain Surface Owners' first issue.

## II. Permanent Injunction

### A. Background Facts and Parties' Arguments

Surface Owners contended in the trial court that they were entitled to a permanent injunction against Lessees on two bases: (1) Lessees' alleged violations of the NEC, which violated the Texas Natural Resources Code and (2) Lessees' operating their leases in excess of their rights to use the surface estate, which constituted a continuing trespass. Regarding the NEC, Surface Owners contended that the jury's affirmative answers to question 1 and to subparts of questions 6 and 12 established violations of the Natural Resources Code, which provides:

> An operator shall construct, operate, and maintain an electrical power line serving a well site or other surface facility employed in operations incident to oil and gas development and production in accordance with the [NEC] published by the National Fire Protection Association and adopted by the Texas Commission of Licensing and Regulation under Chapter 1305, Occupations Code.

Tex. Nat. Res. Code Ann. § 91.019.

In response to question 1, the jury found that Lessees or their contractors were negligent in their "construction, operation, or maintenance of electrical power lines serving a well site or other surface facility employed in operations incident to oil and gas development and production," and that "negligence" killed Surface Owners' cow

through electrocution. In response to question 6, the jury found, among other findings, that Lessees "negligently create[d] a private nuisance" by "failing to properly and safely guard against and prevent accidental contact with or physical damage to all electrical fixtures and electrically operated equipment." In each of these questions, "negligence" and "ordinary care" were defined using the standard definitions found in the Pattern Jury Charge, without reference to the NEC. Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: General Negligence* PJC 2.1 (2018). In response to question 12, the jury found, among other findings, that Lessees committed waste by creating "unnecessary fire hazards." Because the jury's affirmative findings to question 1 and to subparts of 6 and 12 were unchallenged, Surface Owners contend that these findings are "binding" on appeal. *See Prince v. Foreman*, No. 2-08-495-CV, 2010 WL 87334, at *1 (Tex. App.—Fort Worth Jan. 7, 2010, pet. denied) (mem. op.).

Regarding the trespass action, in response to two subparts of question 8, the jury found that Lessees trespassed on Surface Owners' land by "us[ing] more of the . . . land than was reasonably necessary" by (1) "failing to prevent trash, debris, or unused equipment from being placed on [Surface Owners'] land" and (2) "storing or placing junk or equipment on the . . . land which was not reasonably necessary for operating the Lease."

Surface Owners argue that they are entitled to permanent injunctive relief because the jury found that Lessees had violated their substantive rights (violations of

19

the Natural Resources Code due to the NEC violations and trespass). According to Surface Owners, where a jury has found that a party has violated the substantive rights of another, especially through a statutory violation, the trial court has no discretion to deny permanent injunctive relief. *Priest v. Tex. Animal Health Comm'n*, 780 S.W.2d 874, 875–76 (Tex. App.—Dallas 1989, no writ).

Lessees contend that the jury's negative answers to subparts in questions 6 and 8 and to the entirety of questions 3, 5, and 10 establish that they did not violate the Natural Resources Code by non-compliance with the NEC. Surface Owners alleged five causes of action based on violations of the NEC. Portions of jury Questions 3, 5, 6, 8, and 10 were submitted on each alleged NEC cause of action as follows:

(a)    negligence (Jury Question No. 3);

(b)    intentional creation of a private nuisance (Jury Question No. 5);

(c)    negligent creation of a private nuisance (Jury Question No. 6);

(d)    use of more of Surface Owners' land than was reasonably necessary (Jury Question No. 8); and

(e)    failing to accommodate Surface Owners' existing use of the surface (Jury Question No. 10)

To each individual question which specifically referenced the NEC within the broader numbered question, the jury answered, "No." Like Surface Owners, Lessees argue that these jury findings favorable to them, which are unchallenged on appeal, are binding on this court. *Carbona v. CH Med., Inc.*, 266 S.W.3d 675, 687 (Tex. App.—

20

Dallas 2008, no pet.); *Morrell v. Finke*, 184 S.W.3d 257, 285 n.29 (Tex. App.—Fort Worth 2005, pet. denied).

Lessees disagree that the trial court had no discretion to deny permanent injunctive relief. Lessees contend that the trial court has discretion to determine whether a defendant has engaged in a settled course of conduct and whether to assume the conduct may continue. They recognize that if justified under the rules of equity, a trial court may determine that the defendant has engaged in a settled course of conduct and, absent clear proof to the contrary, may assume that the defendant will continue to do so. *State v. Tex. Pet Foods, Inc.*, 591 S.W.2d 800, 804 (Tex. 1979). However, Lessees argue that evidence of past acts or practices will not support injunctive relief; instead, there must be a showing that the violations will probably recur. *Spears v. City of S. Hous.*, 150 S.W.2d 74, 77–78 (Tex. [Comm'n Op.] 1941). Lessees assert that unlike a prohibitory injunction, a mandatory injunction may be granted only if there exists an extreme necessity or hardship, which must be established by clear and compelling evidence not shown here. *Sw. Tel. & Tel. Co. v. Smithdeal*, 136 S.W. 1049, 1052 (Tex. 1911); *Savering v. City of Mansfield*, 505 S.W.3d 33, 49 (Tex. App.—Fort Worth 2016, pet. denied) (op. on reh'g en banc). Finally, Lessees argue that the injunctive relief sought by Surface Owners would have been improper and unenforceable because it was too vague, indefinite, unclear, and speculative.

21

**B. Standard of Review**

We review a trial court's ruling on an application for permanent injunction for an abuse of discretion. *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 792 (Tex. 2020); *Operation Rescue–Nat'l v. Planned Parenthood of Hous. Se. Tex., Inc.*, 975 S.W.2d 546, 560 (Tex. 1998). A trial court has no discretion in applying the law to the established facts of the case. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). A trial court's failure to correctly apply the law to the facts of the case is an abuse of discretion. *Id.*; *see also In re M.N.G.*, 147 S.W.3d 521, 530 (Tex. App.—Fort Worth 2004, pet. denied) (op. on reh'g). Generally, discretion is abused and an order is subject to reversal when the trial court misinterprets or misapplies the law or acts arbitrarily or unreasonably. *Perry Homes v. Cull*, 258 S.W.3d 580, 598 n.102 (Tex. 2008); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 791 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

An appellate court may not reverse for an abuse of discretion merely because it disagrees with the decision of the trial court. *LaRue v. Chief Oil & Gas, L.L.C.*, 167 S.W.3d 866, 873 (Tex. App.—Fort Worth 2005, no pet.). There must be a clear abuse of discretion, which "arises only when the trial court's decision is not supported by some evidence of substantial and probative character." *12636 Research Ltd. v. Indian Brothers, Inc.*, No. 03-19-00078-CV, 2021 WL 417027, at *15 (Tex. App.—Austin Feb. 5, 2021, no pet.) (mem. op.) (quoting *Bloys v. Wilson*, No. 03-03-00193-CV,

22

2004 WL 162974, at *11 (Tex. App.—Austin Jan. 29, 2004, pet. denied) (mem. op.)). A trial court does not abuse its discretion when its decision is based on conflicting evidence, at least some of which reasonably supports its decision. *HouseCanary, Inc. v. Title Source, Inc.*, 622 S.W.3d 254, 259 (Tex. 2021).

Where the trial court's findings involve mixed questions of law and fact, we defer to the trial court's factual determinations if supported by the evidence. *Perry Homes*, 258 S.W.3d at 598 n.102. Where findings of fact and conclusions of law are neither requested nor filed, "the judgment of the trial court implies all necessary findings to support the judgment" and "[t]he trial court's decision [on the granting or denial of a permanent injunction] must be sustained if there is any reasonable legal theory consistent with the evidence to support it." *Law v. Johnson*, 826 S.W.2d 794, 796 (Tex. App.—Houston [14th Dist.] 1992, no writ); *see also Mo. Pac. Transp. Co. v. Union Bus Lines, Inc.*, 210 S.W.2d 846, 848 (Tex. App.—Eastland 1948, writ ref'd n.r.e.); *Gordon v. Zoes*, 125 S.W.2d 1049, 1049–50 (Tex. App.—Galveston 1939, no writ).

## C. Analysis

The starting point for our analysis of the trial court's denial of the permanent injunction is *State v. Texas Pet Foods, Inc.*, 591 S.W.2d 800 (Tex. 1980), a case cited by both sides. *Texas Pet Foods* involved an action brought by the State to enjoin a poultry-rendering plant operator from conducting certain activities in violation of the Texas Clean Air Act, section 4.02(a); Texas Water Quality Act, section 21.253(b); and the

Texas Renderer's Licensing Act, section 19(b). The first two acts provided for mandatory injunctive relief for violations; the third provided for injunctive relief, but it was not expressly mandatory. *See id.* at 803 (quoting the acts' relevant provisions). Trial was held to a jury, which found numerous violations occurring over a fourteen-month period before trial. The trial court granted permanent injunctive relief to prevent future violations. *Id.* at 804. In its analysis of the case, the Supreme Court addressed the proper roles of the court and jury in the process of decision making in the equity setting, citing with approval *Alamo Title Co. v. San Antonio Bar Ass'n*, 360 S.W.2d 814, 816 (Tex. App.—Waco 1962, writ ref'd n.r.e.):

> We do not consider the question of likelihood of (defendant's) resumption or continuation of the acts enjoined as being an ultimate issue of fact for the jury. . . . Although in Texas the findings on issues of fact are binding, equitable principles and the relief afforded by equity continue to be applied by the court itself, . . . Rule 693, Texas Rules of Civil Procedure . . . . A jury in equity, even under a blended system, does not decide the issue of expediency, necessity or propriety of equitable relief. If submitted, the issue would evoke only a conjectural and speculative surmise which, in our opinion, would not control the processes of equity. It was an element deducible from the circumstances for the court to consider in determining whether wrong or injury might be anticipated and whether chancery powers should be exercised. It constituted here, in effect, a mixed question of law and fact at most. Such questions are not for the jury in injunction cases.

*Tex. Pet Foods*, 591 S.W.2d at 803. The Court then discussed the effects of the jury's findings of violations in the case before it. The Court stated,

> When the jury finds violations occurring and continuing up to or near the date of the trial, the trial court *may*, in equity, determine that the defendant has engaged in a settled course of conduct and may assume that it will continue, absent clear proof to the contrary.

*Id.* at 804 (emphasis added). Importantly, the Court concluded that the trial court "necessarily determined that future violations of the statutes were likely to occur when it rendered its judgment granting the injunction." *Id.* In other words, the evidence and the jury findings supported the court's decision to grant injunctive relief. *Id.* at 805.

### 1. Denial of Injunction for Alleged Statutory Violations

Regarding the request for injunctive relief arising from alleged violations of the NEC and Natural Resources Code, this case is distinguishable from *Texas Pet Foods*. Here, the trial court did not grant, but denied, permanent injunctive relief. The record reflects no request for findings of fact and conclusions of law regarding the trial court's denial of injunctive relief. Thus, we must determine if the jury's findings (or any implied findings) support the denial of the relief, and if that denial is supported by the evidence. *See Glattly v. Air Starter Components, Inc.*, 332 S.W.3d 620, 642 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). If so, the trial court's denial of injunctive relief was not an abuse of discretion. *See Tex. Pet Foods*, 591 S.W.2d at 804–05; *Law*, 826 S.W.2d at 796; *Mo. Pac. Transp. Co.*, 210 S.W.2d at 848; *Gordon*, 125 S.W.2d at 1049–50.

The parties acknowledge that the evidence in the case was disputed on the statutory violation issue. In their brief, Surface Owners direct this court to several references in the record detailing Lessees' violations of the NEC, including expert testimony, photographs of the property, and testimony about Surface Owners' cow that was electrocuted. Lessees, on the other hand, direct our attention to portions of

the record reflecting successful remediation of the electrical problems before trial, including testimony from their expert that the Lessees' remediation work resulted in safe, prudent operation of the leases as well as testimony from Surface Owners' expert that any remaining NEC issues were "relatively minor." Apparently, the expert's description of the non-compliance as "relatively minor" was accurate, as Surface Owners noted in their reply brief that "relatively minor" non-compliance is still "non-compliance." Finally, the jury answered "no" to questions 3, 5, 6, 8 and 10 regarding NEC violations by Lessees. Assessing the likelihood that statutory violations will continue is part of the trial court's determination whether to grant permanent injunctive relief for violation of a statute. *Chromalloy Gas Turbine Corp. v. United Techs. Corp.*, 9 S.W.3d 324, 327–29 (Tex. App.—San Antonio 1999, pet. denied) (op. on reh'g) (reviewing trial court's assessment of threat of future violations of antitrust law); *see also Tex. Pet Foods*, 591 S.W.2d at 803–04. It would not have been proper to submit such inquiry to the jury as it is a question of equity for the trial court to decide. *Tex. Pet Foods*, 591 S.W.2d at 804. The evidence of whether violations of the NEC had occurred and would likely occur in the future was disputed. When asked specifically whether Lessees had committed wrongful conduct involving the NEC, the jury answered in the negative. Finally, by denying the injunctive relief, the trial court impliedly found no future threat of ongoing violations. Since jury findings and implied findings support the denial of injunctive relief, and evidence supports those findings, we cannot hold that the trial court abused its discretion in denying permanent

26

injunctive relief regarding future compliance with the NEC. *See Chromalloy*, 9 S.W.3d at 329.

Surface Owners contend that the trial court had no discretion to deny them permanent injunctive relief regarding the NEC violations because Texas law requires a trial court to grant injunctive relief when a jury finds the defendant is engaged in conduct that violates a statute. This is an incorrect statement of the law, as Surface Owners more accurately state in their reply brief when summarizing the holding in *Priest v. Texas Animal Health Commission*: "Where the facts *conclusively show* a party is violating the substantive law it becomes the duty of the court to enjoin the violation and in such case there is no discretion to be exercised." 780 S.W.2d at 876 (emphasis added). In this case, as noted above, there was a dispute in the evidence regarding the NEC violations and an inconsistency in the jury's findings. Such being the case, the evidence does not conclusively support the granting of permanent injunctive relief. *See Chromalloy*, 9 S.W.3d at 329. We overrule the portion of Surface Owners' second issue complaining of the denial of injunctive relief for violating the NEC and therefore the Texas Natural Resources Code.

## 2. Denial of Permanent Injunction for Trespass

Unlike the trial court's denial of injunctive relief for NEC violations, the trial court's denial of Surface Owners' request for permanent injunctive relief for trespass was an abuse of discretion. Surface Owners' pleading sought permanent injunctive relief against Lessees for violations of Texas "substantive law." It is axiomatic that

trespass is a part of Texas substantive law. *See, e.g., Harris Cnty. v. Cypress Forest Pub. Util. Dist. of Harris Cnty.*, 50 S.W.3d 551, 554 (Tex. App.—Houston [14th Dist.] 2001, no pet.) ("A trespass is usually regarded as an intentional tort in the sense that it involves an intent to commit an act which violates a property right, or would be practically certain to have that effect, although the actor may not know that the act he intends to commit is such a violation.").

In their trespass claim, Surface Owners alleged Lessees trespassed by, among other things, "cluttering up the surface with unreasonable and unnecessary junk, trash, discarded equipment and other personal property, and unneeded equipment" and by "storing and disposing of their trash and junk, rather than properly disposing of such items off lease." The undisputed evidence at trial supported these allegations, including testimony and photographs identifying junk, equipment, and other trash littering Surface Owners' property. The evidence also showed that the trespass continued after Surface Owners filed suit. The evidence showed that after Surface Owners filed this suit, Lessees hauled used junk and equipment that they were not using to develop the minerals of the Mangold and Ferguson leases onto Surface Owners' land from a yard in Wichita Falls after Lessees sold the yard. In other words, Lessees stored equipment they used to develop their other leases on Surface Owners' land. The discarded junk was still on Surface Owners' property during the trial. As a result, the jury found that Lessees trespassed on Surface Owners' land by "us[ing] more of [Surface Owners'] land than was reasonably necessary" and by "storing or

28

placing junk or equipment on [Surface Owners'] land which was not reasonably necessary for operating the Lease."

Surface Owners sought a permanent injunction in the trial court based on the jury's verdict in their favor on trespass and because the evidence conclusively established trespass and their right to a permanent injunction. Lessees did not oppose the permanent injunction in the trial court on the grounds that Surface Owners had not established trespass by jury verdict or conclusive evidence. Rather, Lessees opposed the injunctive relief on the grounds that (1) Surface Owners' pleadings lacked sufficient specificity for the trial court to grant injunctive relief; (2) the relief requested in the Motion for Entry of Judgment was too vague, indefinite, and uncertain to be enforceable; (3) the requested relief was primarily for a mandatory injunction and Surface Owners failed to make a proper showing to justify such relief; and (4) Surface Owners' recovery of only nominal damages was insufficient to justify injunctive relief. Without providing its reasoning, the trial court denied Surface Owners' request for permanent injunctive relief through its Mother Hubbard clause in the Final Judgment.

On appeal, Lessees still have not contested Surface Owners' right to permanent injunctive relief for trespass on the ground that the jury findings were not supported by the evidence or on the ground that Surface Owners did not conclusively establish trespass. In fact, Lessees have made no effort in their briefing to direct the court's attention to any evidence which even created a material fact issue on trespass. Instead,

29

in this court, Lessees have challenged Surface Owners' right to permanent injunctive relief regarding trespass on the grounds that (1) Surface Owners' pleadings lacked specificity of requested injunctive relief to authorize the court to grant injunctive relief; (2) Surface Owners' requested relief is primarily for a mandatory injunction, but they failed to make a proper showing to justify such relief; and (3) the relief requested in Surface Owners' Motion for Entry of Judgment was impermissibly vague, uncertain, and indefinite to be enforceable.

A permanent injunction is a proper remedy to restrain repeated or continuing trespasses. *Aguilar v. Morales*, 162 S.W.3d 825, 836 (Tex. App.—El Paso 2005, pet. denied); *see also Beathard Joint Venture v. W. Hous. Airport Corp.*, 72 S.W.3d 426, 432 (Tex. App.—Texarkana 2002, no pet.); *Sunrise Helicopters, Inc. v. Nw. Airport Mgmt., Inc.*, No. 14-99-00274-CV, 2001 WL 253591, at *2 (Tex. App.—Houston [14th Dist.] Mar. 15, 2001, pet. denied) (not designated for publication); *Bass v. Champion Int'l Corp.*, 787 S.W.2d 208, 211 (Tex. App.—Beaumont 1990, no writ). As our Supreme Court has noted,

> [T]he definition of a common law trespass has remained constant throughout this Court's jurisprudence and has become a well-established rule relating to property rights. At its core, a "(t)respass to real property is an unauthorized entry upon the land of another, and may occur when one enters—or causes something to enter—another's property."

*Env't Processing Sys., L.C. v. FPL Farming Ltd.*, 457 S.W.3d 414, 422 (Tex. 2015) (quoting *Barnes v. Mathis*, 353 S.W.3d 760, 764 (Tex. 2011) (emphasis omitted)). In the mineral lease context, when a mineral lessee exceeds its rights to use the surface, the

lessee "'becomes a trespasser.'" Alison Gardner et. al., *Mineral Issues' Impact on Solar Energy Development in Texas*, 6 Tex. J. Oil Gas & Energy L. 241, 243 & n.7 (2011) (quoting *Brown v. Lundell*, 344 S.W.2d 863, 866 (Tex. 1961)). Additionally, a mineral owner's implied right to use the surface to develop minerals extends only to using the surface to benefit the minerals within that particular lease. *See Robinson v. Robbins Petrol. Corp.*, 501 S.W.2d 865, 867–68 (Tex. 1973). A lessee cannot use the surface to benefit a different lease. *See id.* Here, the evidence conclusively established that Lessees trespassed on Surface Owners' surface estate, which trespass started prior to the filing of suit and continued through the time of trial.

Lessees seek to justify the denial of the permanent injunction because the relief requested by Surface Owners in their pleadings was insufficient to justify the granting of permanent injunctive relief. Lessees argue that the party seeking injunctive relief must specify the precise relief sought or a "court is without jurisdiction to grant relief beyond and in addition to that particularly specified." *Fletcher v. King*, 75 S.W.2d 980, 982 (Tex. App.—Amarillo 1934, writ ref'd); *see also Winslow v. Duval Cnty. Ranch Co., Inc.*, 519 S.W.2d 217, 221 (Tex. App.—Beaumont 1975, writ ref'd n.r.e.); *Davies v. Unauthorized Prac. Comm. of State Bar of Tex.*, 431 S.W.2d 590, 594 (Tex. App.—Tyler 1968, writ ref'd n.r.e.). Issuing an injunction that exceeds the pleadings is a clear abuse of discretion. *Webb v. Glenbrook Owners Ass'n*, 298 S.W.3d 374, 391 (Tex. App.—Dallas 2009, no pet.) (op. on reh'g).

However, the record is devoid of special exceptions by Lessees challenging the specificity of Surface Owners' pleadings seeking injunctive relief and of rulings thereon prior to trial. In the absence of special exceptions and rulings thereon prior to trial, pleadings seeking injunctive relief will be liberally construed in Surface Owners' favor. *See Garden Oaks Maint. Org. v. Chang*, 542 S.W.3d 117, 139 n.19 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Pleadings that allege facts which put Lessees on notice of the causes of action against them that underlie the request for injunctive relief are sufficient. *See Kennedy v. Gulf Coast Cancer & Diagnostic Ctr. at Se., Inc.*, 326 S.W.3d 352, 359 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *see also Sonwalkar v. St. Luke's Sugar Land P'ship, L.L.P.*, 394 S.W.3d 186, 196 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *Birds Constr., Inc. v. Gonzalez*, 595 S.W.2d 926, 929–30 (Tex. App.—Corpus Christi 1981, no pet.) (holding trial court did not exceed its jurisdiction to grant a temporary injunction barring foreclosure sale pending trial where plaintiff prayed for a temporary injunction alleging that any sale pending final resolution would be harmful and asked the trial court to maintain the status quo).

In Surface Owners' Fourth Amended Original Petition, their trial pleading, they asserted a cause of action for "Unreasonable and Excess Use," wherein they set forth in substantial detail how Lessees allegedly exceeded their rights to use the surface estate to produce oil and gas and how such unreasonable and excess use damaged the surface estate. Although Surface Owners did not use the words "trespass" or "continuing trespass," they alleged facts which put Lessees on notice (1) that they

32

were being sued for unreasonable and excess use of the surface estate, which is a recognized form of trespass, *Brown*, 344 S.W.2d at 866 (and therefore a violation of substantive law, *see Harris Cnty.*, 50 S.W.3d at 554); (2) that such was allegedly causing damages to Surface Owners; and (3) that Surface Owners were seeking to permanently enjoin Lessees from interfering with their substantive rights. In the absence of special exceptions and rulings by the trial court, these allegations were sufficient and were to be liberally construed in favor of Surface Owners. *See Livingston v. Livingston*, 537 S.W.3d 578, 588 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *Kennedy*, 326 S.W.3d at 359; *Birds Constr. Inc.*, 595 S.W.2d at 930.

Lessees also contend that the injunctive relief sought by Surface Owners is, in essence, a mandatory injunction; that a mandatory injunction should be granted only in cases of extreme risk of injury or damage in the event of failure to grant the mandatory injunction; and that Surface Owners failed to demonstrate such need in this case. *See Smithdeal*, 136 S.W. at 1052; *Pharaoh Oil & Gas, Inc. v. Ranchero Esperanza, Ltd.*, 343 S.W.3d 875, 883 (Tex. App.—El Paso 2011, no pet.); *Tri-Star Petrol. Co. v. Tipperary Corp.*, 101 S.W.3d 583, 592 (Tex. App.—El Paso 2003, pet. denied); *Rhodia, Inc. v. Harris Cnty.*, 470 S.W.2d 415, 419 (Tex. App.—Houston [1st Dist.] 1971, no writ); *Jowell v. Carnine*, 20 S.W.2d 1087, 1089 (Tex. App.—El Paso 1929, writ ref'd). All of these cases relied on by Lessees except *Smithdeal* are temporary, not permanent, injunction cases where mandatory injunctions are viewed as problematic because they

33

change the status quo. *See Pharaoh Oil & Gas, Inc.*, 343 S.W.3d at 883. They are therefore inapposite.

We hold that *Smithdeal* is likewise not applicable to this case because, contrary to Lessees' argument, the injunctive relief sought by Surface Owners is primarily prohibitive in nature, i.e., to prohibit Lessees from:

> [1] bringing, placing or leaving on the Subject Property parts, junk, trash, equipment or equipment parts which are not being used by [Lessees] in the production of oil and gas from [the Subject Property] or reasonably necessary for operations on the Subject Property;

> [2] failing to remove from the Subject Property parts, junk, trash, equipment, or equipment parts which have been brought onto, placed on, or left on the Subject Property by [Lessees], or [Lessees'] predecessors in interest, which items are not being used by [Lessees] in the production of oil and gas from [the Subject Property] or reasonably necessary for operations on the Subject Property;[7] [and]

> [3] bringing onto the Subject Property from other leases or storage yards, and storing on the Subject Property, unused parts, junk, trash, debris, equipment or equipment parts, which items are not being used by [Lessees] in the production of oil and gas from or reasonably necessary for operations [on] the Subject Property.

We hold that these requests are appropriate subjects of prohibitory injunctive relief.

*See Sunrise Helicopters, Inc.*, 2001 WL 253591, at *2.

---

[7]To be more consistent with a prohibitory injunction in accordance with the evidence and findings, Paragraph [2] would be more appropriately worded as: "storing or keeping on the Subject Property parts, junk, trash, equipment, or equipment parts which have been brought onto, placed on, or left on the Subject Property by [Lessees], or [Lessees'] predecessors in interest, which items are not being used by [Lessees] in the production of oil and gas from or reasonably necessary for operations on the Subject Property; and . . . ."

Lessees also argue that Surface Owners' Motion for Entry of Judgment was too vague, uncertain, and indefinite to be enforceable regarding the injunctive relief requested therein because the motion did not give adequate notice of what conduct was to be prohibited. Lessees rely on *San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*, 291 S.W.2d 697, 702 (Tex. 1956); *Villalobos v. Holguin*, 208 S.W.2d 871, 875 (Tex. 1948); *Tarr v. Lantana Sw. Homeowners' Ass'n, Inc.*, No. 03-14-00714-CV, 2016 WL 7335861, at *11 (Tex. App.—Austin Dec. 16, 2016) (mem. op.), *judgment withdrawn, appeal dismissed*, No. 03-14-00714-CV, 2017 WL 1228870 (Tex. App.—Austin Mar. 30, 2017, no pet.) (mem. op.); *Webb*, 298 S.W.3d at 384; and *Enriquez v. Rodriguez-Mendoza*, No. 03-12-00220-CV, 2013 WL 490993, at *3 (Tex. App.—Austin Feb. 1, 2013, no pet.) (mem. op.). We reject Lessees' premise. They are in the business of operating oil and gas leases. They should be expected to know what equipment and personal property are necessary to operate the leases in question and to distinguish between items that may be properly stored on the surface estate and junk or trash. As noted in *Griffith v. Mauritz*, in deciding whether an injunction prohibiting the appellants from pasturing too many cattle in certain places was too vague or indefinite: "[I]n the instant case, there will be no difficulty on the part of the appellants to understand and obey the injunction if they use just ordinary intelligence." 308 S.W.2d 599, 606 (Tex. App.—Houston, 1957, no writ). The same is true in this instance for Lessees.

The facts in this case were conclusive; the trial court therefore had no discretion in applying the law to those facts, *see Walker*, 827 S.W.2d at 840, and we reject all of Lessees' grounds for otherwise upholding the injunction's denial. We therefore sustain the remaining portion of Surface Owners' second issue, in which they complain that the trial court abused its discretion by failing to permanently enjoin Lessees from future trespasses on Surface Owners' estate.

## III. Conclusion

We affirm in part and reverse and remand in part. Having held that the trial court erred in granting Lessees' summary judgment on Surface Owners' breach of contract claim regarding the covenants, we reverse the trial court's judgment in favor of Lessees as to that claim and remand the case to the trial court for further proceedings on that claim. Having held that the trial court did not abuse its discretion in denying permanent injunctive relief to Surface Owners regarding violations of the Natural Resources Code arising from violations of the NEC, we affirm that portion of the trial court's judgment. Finally, having held that the trial court abused its discretion by denying Surface Owners' request for a permanent injunction against Lessees' trespass on Surface Owners' estate, we reverse that portion of the trial court's judgment and remand the case to the trial court for entry of a permanent injunction enjoining Lessees from future trespass.

/s/ Mike Wallach

Mike Wallach

Justice

Delivered: November 24, 2021